UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| N8 MEDICAL, INC., et al., | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| vs. | ) Case No. 4:11CV2235 CDP |
| | ) |
| RIVERROCK BIOSCIENCE SERIES, | ) |
| a series of RIVERROCK | ) |
| BIOSCIENCE, LLC, | ) |
| | ) |
| Respondent. | ) |

# **MEMORANDUM AND ORDER**

Petitioners N8 Medical, Inc. and N8 Medical LLC brought this case seeking to compel arbitration with respondent RiverRock Bioscience Series. Both parties entered into separate license agreements with Brigham Young University for the development of products from catatonic steroid antibiotics, and now dispute the scopes of their respective licenses. N8 Medical contends that this dispute is subject to the arbitration clause contained in a Securities Purchase Agreement between the parties. Because the fields of use dispute is explicitly included in the SPA, I find that the fields of use dispute is covered by the broad arbitration agreement between the parties. I will therefore grant N8 Medical's motion for summary judgment to compel arbitration.

## Background

Brigham Young University patented and owns the intellectual property rights with respect to the composition and certain uses of catatonic steroid antibiotics ("CSA Compounds"). RiverRock entered into a license agreement with BYU in July of 2010 under which RiverRock was granted the rights to commercialize, sell, and distribute products developed from the CSA Compounds within specified fields of use. N8 Medical later entered into a similar license agreement with BYU for separate specified fields of use.

In late 2010, N8 Medical contacted RiverRock after learning that RiverRock was developing products N8 Medical believed fell within its exclusive fields of use. RiverRock denied that it was infringing upon N8 Medical's fields of use. In August of 2011, the parties entered into a written Securities Purchase Agreement in which RiverRock agreed to purchase an interest in N8 Medical, thus acquiring the right to develop products in the disputed fields of use. The SPA contemplated that the deal might fail, and provided, in part:

> In the event the parties fail to consummate the Transaction, then RiverRock shall: (i) diligently work with [N8 Medical] to negotiate a resolution of field of use issues within thirty (30) days; (ii) provide [N8 Medical] with the RiverRock license agreements with BYU; (iii) provide [N8 Medical] with the New N8 License Agreement...

Securities Purchase Agreement at § 11.1(c). The SPA also contains an arbitration clause, which states: "All disputes under this agreement shall be subject to final and binding arbitration..." SPA at § 11.7. The SPA provided that the arbitration clause should continue "in full force and effect" even if the SPA was terminated. SPA at § 11.1(b)(ii).

RiverRock was unable to raise sufficient funds to purchase N8 Medical's shares, and the parties were unsuccessful in negotiating a resolution of their fields of use dispute. On December 8, 2011, N8 Medical filed an arbitration demand with the American Arbitration Association, stating as the nature of the dispute:

> Respondent has breached the Securities Purchase Agreement between the parties by failing to negotiate a resolution of the fields of use for technology licensed from Brigham Young University. Respondent is also exploiting technology that has been exclusively licensed to Claimant. Claimant seeks a declaratory judgment as to the appropriate fields of use of the technology, and an injunction against Respondent for the unauthorized use of the technology that has been exclusively licensed to Claimant.

Docket No. 12–4.

On December 14, 2011, RiverRock filed a complaint in the United States District Court for the District of Utah seeking declaratory judgment regarding the parties' respective fields of use for the CSA Compounds. On December 23, 2011, N8 Medical filed the present action in this court, seeking to compel arbitration of

all claims asserted in the arbitration demand and all claims asserted in RiverRock's complaint filed with the District Court for the District of Utah. Those claims include determining the parties' respective fields of use, as well as whether RiverRock failed to negotiate the fields of use dispute in good faith. Although RiverRock denies that the fields of use dispute is subject to the arbitration agreement, it concedes that the failure to negotiate question is covered, and has filed an answering statement in the arbitration as to that claim.

N8 Medical filed this motion for summary judgment, asking the Court to find as a matter of law that all claims are subject to arbitration. RiverRock filed a cross-motion requesting summary judgment that the fields of use dispute between the parties is not subject to the arbitration clause, and asking that resolution of this case be deferred to the first-filed action currently pending in the U.S. District Court for the District of Utah.

## Discussion

*Legal Standard*

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v Carrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material facts exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue of material fact. *Anderson*, 477 U.S. at 249.

*Arbitrability*

"[T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether 'the making of the agreement for arbitration or the failure to comply therewith' is at issue." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting U.S.C. § 4). "[The Eighth Circuit] has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e. whether the dispute *falls within the scope* of the arbitration agreement." *Id.* (emphasis in original). Neither party challenges the validity of the arbitration clause, and RiverRock concedes that the failure to negotiate issue is

subject to arbitration. Thus the only question is whether the arbitration clause applies to the fields of use dispute.

"The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Medcam*, 414 F.3d at 975. The district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quotation omitted).

Here, the arbitration clause in the SPA states, "All disputes under this agreement shall be subject to final and binding arbitration in accordance with the provisions of this section." SPA at § 11.7. RiverRock, relying on Ninth Circuit caselaw, argues that the "arising under" language should be narrowly construed, as contrasted with arbitration clauses that provide for arbitration of disputes "concerning" or "related to" the relevant agreement. *See, e.g.*, *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). Accordingly, RiverRock argues that the fields of use dispute, which existed before the SPA came into existence, cannot have arisen under that agreement.

However, the Eighth Circuit does not interpret such clauses so narrowly. In *PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010), the Eighth Circuit interpreted an arbitration clause that covered "all

disputes arising under" an agreement. The Court acknowledged that the clause may be somewhat narrower than "related to" clauses, but found that it included "no limiting language and is generally broad in scope." *Id.* at 837. It evaluated the "arising under" language as "a broad arbitration clause," holding that arbitration may be compelled "as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision.'" *Id.* (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008)). Furthermore, in *3M*, the Eighth Circuit implied that clauses which require arbitration of "all" or "any" disputes should be interpreted "extensively." 542 F.3d at 1199. Here, the arbitration clause covers "all" disputes under the SPA, and contains no limiting language.

The SPA provides that the arbitration clause shall survive regardless of whether the agreement was terminated. SPA at § 11.1(b)(ii). In the same section, the SPA provides that:

> In the event the parties fail to consummate the Transaction, then RiverRock shall: (i) diligently work with the Companies to negotiate a resolution of field of use issues within thirty (30) days; (ii) provide the Companies with the RiverRock license agreements with BYU; (iii) provide the Companies with the New N8 License Agreement...

SPA at § 11.1(c). The fields of use dispute and the parties' respective license agreements with BYU are explicitly within the scope of the SPA. The arbitration

- 7 -

clause, covering "all disputes" under the SPA, is thus clearly susceptible of an interpretation that covers the fields of use dispute. *See Medcam*, 414 F.3d at 975.

RiverRock argues that the fields of use dispute cannot be a dispute "under" the SPA since the dispute would exist regardless of whether the parties had entered into any agreement. RiverRock cites *Industrial Wire Products, Inc. v. Costco Wholesale Corporation*, 576 F.3d 516, 521 (8th Cir. 2009), in which the Eighth Circuit called similar reasoning by the district court judge "likely correct," before deciding the case on alternative grounds. Aside from this statement being dicta, the situation in *Industrial Wire* is not completely analogous to the present case. In *Industrial Wire*, the parties had entered an agreement, with an arbitration clause, whereby defendant Costco agreed to sell plaintiff IWP's storage devices. *Id*. at 517. IWP ultimately sued Costco alleging that Costco infringed IWP's patent and trade dress rights and violated Missouri unfair competition laws when Costco began selling a similar storage device from another manufacturer. *Id.* at 518. Costco moved to compel arbitration. *Id.* The subject of the lawsuit thus arose solely under the relevant statutes, and involved the sale of a different product. Here, the SPA itself was an attempt by the parties to resolve the fields of use dispute, and it established a mechanism for resolving this dispute if the sale

was not consummated.[1]  The fields of use dispute is thus covered by the arbitration agreement.

Accordingly,

**IT IS HEREBY ORDERED** that petitioners' motion for summary judgment to compel arbitration [#11, 36] is granted.  A separate judgment compelling arbitration is entered this same date.

**IT IS FURTHER ORDERED** that respondent's cross-motion for summary judgment [#38] is denied.

                                                             */s/ Catherine D. Perry*
                                                             CATHERINE D. PERRY
                                                             UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2012.

---

[1] It is evident from the mutually agreed upon facts as well as the text of the SPA itself that the SPA was entered into in an attempt to resolve the fields of use dispute.  I therefore need not, and have not, considered the parol evidence issue discussed in both parties' briefs.